# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS (SBN 108325)
BEN MEISELAS (SBN277412)
Attorneys For Plaintiff John Doe, by and through his
Guardian *Ad Litem* Lynette Young, on
behalf of himself and all others similarly situated

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, a minor by and through his Guardian *Ad Litem* Lynette Young, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SNAPCHAT, INC., A Delaware Corporation, and DOES 1-20<br><br>Defendants<br>_____ | Case No.: 2:16-cv-04955<br><br>**CLASS COMPLAINT FOR DAMAGES**<br><br>1. **Violations of Unfair Business Practices Act [Cal. Bus. & Prof. Code § 17200, *et seq.*]**<br>2. **Negligence *Per Se***<br>3. **Violations of 47 U.S.C. §230, *et seq.***<br>4. **Unjust Enrichment**<br>5. **Injunctive Relief**<br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COMPLAINT

1.      Plaintiff John Doe brings this putative class action, on behalf of himself and a putative class comprised of approximately 150 million users of "Snapchat," a wildly popular internet computer service and application developed by Snapchat, Inc.

2.      This putative class action is based on Snapchat's willful and intentional violations of the Communications Decency Act, specifically 47 U.S.C. §230 and 47 U.S.C. §231, in addition to other violations of State consumer law[1].

3.      In 2015, in an effort to monetize its interactive platform, Snapchat developed Snapchat Discover, an integrated feature on Snapchat where Snapchat, Inc. creates, generates, curates, develops, and promotes content jointly with "media partners" which include DailyMail, Buzzfeed, Vice, Cosmopolitan, Fusion, MTV, and a handful of other popular media publishers. Snapchat selects the media partners for Snapchat Discover and exercises direct control over its editorial content and what is published to the consumer.

4.      Although Snapchat claims to have pivoted away from its founding roots which included promoting surreptitious "sexting" with disappearing text and images, the content Snapchat develops and curates on Snapchat Discover paints a different and dangerous picture.

5.      Specifically, through Snapchat Discover, Snapchat is currently engaged in an insidious pattern and practice of intentionally exposing minors to harmful, offensive, prurient, and sexually offensive content, without warning minors or their parents that they would be exposed to such explicit content.

6.      Millions of parents in the United States today are unaware that Snapchat is curating and publishing this profoundly sexual and offensive content to their children.

7.      By engaging in such conduct directed at minors, and making it simple and easy for users to "snap" each other content from Snapchat Discover, Snapchat is reinforcing the use of its service to facilitate problematic communications, such as "sexting," between

---

[1] **WARNING:** The images and content contained in this Complaint are not suitable for minors.  The images in this

minors.  Snapchat has placed profit from monetizing Snapchat Discover over the safety of children.

8.    The Communication Decency Act prohibits this conduct.

9.    Specifically, the Communication Decency Act requires internet computer services like Snapchat "at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, to notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections."

10.    Snapchat's "Terms of Service," which are generally entered into directly by minors who even lack the capacity and consent to enter into contracts in the first place, includes **no warnings** about the offensive content on Snapchat Discover.

11.    The Communications Decency Act also provides a $50,000.00 civil penalty for each violation of the Act.  Each day a violation occurs constitutes a separate violation.

12.    As demonstrated below, a random sample of the content Snapchat and its media partners post on Snapchat Discover, and encourage users to share, from the period of just July 1, 2016 through July 3, 2016, demonstrates that millions of minors are being exposed to content that would shock any parent's conscience.  Worse yet, the biggest offender in sharing offensive communications with minors is not user to user communications, but is instead communications that Snapchat is sending and promoting to minors through Snapchat Discover.

13.    This putative class action seeks a simple, but important solution (1) to hold Snapchat financially accountable for the civil penalties it owes for each violation of law, and (2) to compel Snapchat to proactively warn parents and children about the content it curates and/or to develop basic access controls and filters that differentiate minor users

from adult users.

## JURISDICTION AND VENUE

21.     This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds $5,000,000 and is a class action in which some members of the class are citizens of states different from the states where Defendants are citizens.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District as Defendant: (a) is authorized to conduct business in this District and has intentionally availed itself to the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District:  (b)  currently does substantial business in this District; and (c)  is subject to personal jurisdiction in this District.

## PARTIES

23.     At all relevant times John Doe was a resident of Los Angeles County, California, and a citizen of California. Plaintiff, on behalf of himself and the putative National class, and California sub-classes, brings this class action against Snapchat, Inc.

24.     Defendant Snapchat Inc. is a Delaware Corporation with its principal place of business in Venice, California. Each of the DOES 1-10 is the agent, servant, partner, joint-venturer, co-venturer, "media partner," principal, director, officer, manager, employee, or shareholder of one or more of its co-defendant(s) who aided, abetted, controlled, and directed or conspired with and acted in furtherance of said conspiracy with one or more of its co-defendant(s) in said co-defendant(s) performance of the acts and omissions described below.  Plaintiff sues each of these Doe Defendants by these fictitious names because Plaintiff does not know these Defendants' true names and capacities.  Despite reasonable efforts, Plaintiff has not been able to ascertain the identity of DOES 1-20.

25.     Plaintiff further alleges that each Defendant is directly liable and/or vicariously, jointly and severally liable for the violations of the California Consumers Legal Remedies Act and the California Unfair Business Practice Act.

26.     At all times relevant, Plaintiff directly viewed the highly offensive sexual conduct directed at him by Snapchat, Inc, which is provided below in this Complaint.

27.     Upon information and belief, Snapchat, Inc's conduct directly affects approximately 150 million users, to whom Snapchat owes a legal duty of care and to whom Snapchat is directly responsible for damages for each day of each violation.

## FACTUAL ALLEGATIONS

### A.     *SNAPCHAT DISCOVER*

28.     Snapchat is an interactive computer service that provides a mobile application allowing consumers to send and receive photo and video messages known as "snaps." Snapchat markets itself as an "ephemeral" messaging application, having claimed that once a certain period of time expires, the snap "disappears forever."

29.     According to International Business Times, "Back in 2013, Snapchat was solely a one-to-one messaging app. While popular among college students, it had yet to go mainstream or provide much to interest publishers. The narrative began to change when Snapchat introduced 'Stories,' or 24-hour feeds for each user's photos, in October 2013. Storytelling expanded from individual accounts to publishers through the launch of 'Our Stories' on June 17, 2014. Then, on Jan. 27, 2015, Discover entered the picture."[2]

30.     On January 27, 2015, Snapchat formally announced a new feature called "Snapchat Discover."  Snapchat announced:

**Today we're introducing Discover.**

**Snapchat Discover is a new way to explore Stories from different editorial teams. It's the result of collaboration with world-class leaders in media to build a storytelling format that puts the narrative first. This is not social media.**

---

[2] http://www.ibtimes.com/snapchat-discover-one-year-later-how-23-media-companies-are-building-stories-evan-2281851

> **Social media companies tell us what to read based on what's most recent or most popular. We see it differently. We count on editors and artists, not clicks and shares, to determine what's important.[3]**

31.     Snapchat entered into partnerships with popular media publishers for Snapchat Discover including DailyMail, Buzzfeed, Vice, Cosmopolitan, Fusion, MTV, and others.

32.     As stated in its announcement, Snapchat Discover "is not social media." Snapchat exercises significant control, and in some cases complete control, over content published by its media partners.  Snapchat curates, directs, and lends its own in-house editorial team to generate content with its media partners. Snapchat shares in the advertising revenue based on advertisements displayed within the content on Snapchat Discover.  Snapchat's control over the content of its media partners was discussed recently by a representative from Snapchat's media partner Fusion, who stated, "The amount of time that [Snapchat] dedicate[s] to us is unbelievable. . . Honestly, it's something that you do not see with all the platforms. They encourage us to try different things and tweak the format.[4]"

33.     Additionally, Snapchat had unilaterally terminated relationships with media partners such as Yahoo when it objected to the editorial direction.[5]

34.     Snapchat Discover was originally accessible by swiping to a separate area on the Snapchat application.  Snapchat Discover originally looked like this:

---

[3] http://snapchat-blog.com/post/109302961090/introducing-discover

[4] http://www.ibtimes.com/snapchat-discover-one-year-later-how-23-media-companies-are-building-stories-evan-2281851

[5] *Id.*



35.     Snapchat Discover has recently been given a more prominent placement on Snapchat's main user-to-user communication area, in addition to having its own separate area that can be accessed by swiping through the application.  Here is how Snapchat Discover looks today.  Snapchat Discover media partners are found on the horizontal bar above the daily stories posted by the user's friends.



36.     Since the introduction of Snapchat Discover, Snapchat has continued to grow exponentially.

37.     From May 2015 to May 2016, Snapchat's daily video views have grown 400% over the course of the year (from 2 billion to 10 billion, according to Bloomberg).[6] At a linear monthly growth rate of 33%, Snapchat will surpass 18 billion daily video views by May 2017.  Advertising revenue from the Discover page has paralleled this growth.

---

[6] http://www.bloomberg.com/news/articles/2016-04-28/snapchat-user-content-fuels-jump-to-10-billion-daily-video-views

According to Re/code, Snapchat ads are seen anywhere between 500,000 to a million times per day[7].

38.     Snapchat now has approximately 150 million users each day.  Approximately 23 percent (or 34.5 million) are between the ages of 13-17[8].  Snapchat's popularity among the 13-17 demographic is among its largest growth sectors, as children are replacing instant messaging, SMS messaging, and text messaging, with Snapchat as their primary mode of daily communication.

39.     Snapchat user communications and Snapchat Discover are completely integrated allowing users to easily share, comment on, draw over, and discuss topics and content found on Snapchat Discover.  In essence, Snapchat Discover sets a tone and provides certain topics that users can easily share and discuss on Snapchat.

40.     For example, Snapchat's media partners post interactive messages such as an image that says **"Do You Like Me? Yes or No?"**  The user can circle the YES or NO or doddle over the image and quickly send it back to their friends.



41.     However, more frequently these innocent images are becoming rare. Without warning, minors swiping through the Discover Page are being introduced to

---

[7] http://www.recode.net/2015/3/12/11560116/snapchats-ad-rates-for-its-discover-feature-are-really-high

[8] http://www.statista.com/statistics/326452/snapchat-age-group-usa/

offensive adult-rated content that parents would likely prohibit if they know their children were being given unrestricted access to the content by Snapchat.

42.     For example, the same child scrolling past an image of "Do you like me?" would also see the following if they accessed Snapchat Discover from July 1, 2016 through July 3, 2016:

- An article called, **"10 Things He Thinks When He Can't Make You Orgasm."**  The article begins: ***"Orgasms.  For most people, the word puts a smile on their face."***  There is an image of two dolls having sex with a puppy in the background.



- An article called: **"I Got High, Blown, and Robbed When I Was A Pizza Delivery Guy."**  The accompanying picture is of a teenage pizza delivery boy witha thumbs up.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- An article called **"F#ck Buddies Talk About How They Kept It Casual."** The accompanying image is of two teenagers or young adults raising their hands in victory.  The article begins:  ***"What if you could have sex with no strings? Become "fuck buddies" with someone without it souring when one of you inevitably gets more caught up in the relationship than the other? Sounds unlikely, right?"***



- An article called **"People Share Their Secret Rules for Sex,"** which features a picture a female teacher with a rule book.  An example of one of the "rules" is:  ***Do not shove my head towards your dick while we're hooking up in hopes of me giving you a blowjob. If I'm going to do it, I'll do it, so relax.  Same applies to butt stuff."***





**TANYA**

My biggest pet peeve is: Do not shove my head towards your dick while we're hooking up in hopes of me giving you a blowjob. If I'm gonna do it, I'll do it, so relax. Same applies to butt stuff. People who take sex way too seriously are also a turn-off. Sex can be a really hilarious thing (queefs, accidental head-butts, etc.) and that humor is really comforting to me. Probably the last thing is take your socks off. It's just weird if you don't.

**ABBY**

My number one is that if you aren't down with cunnilingus, I'm not having sex with you. (Exception made for the virgin I gave a pass to.)

**LACY**

- Additional articles include: "**14 Sex Problems Only Lesbians Understand,**" next to a picture of scissors, "**Everything You Ever Wanted To Know About Penis Tattoos,**" next to a picture of a tattooed banana, "**People Tell Us Their Weirdest Stoner Snacks,**" next to pictures of a bongs and ketchup, and "**14 Drunk Convos Every Woman Has Had.**"






- The Discover page also features random graphics, which are intended to be shared with friends on Snapchat, containing statements such as "**Beware of**

**Whiskey Dick,"** or cartoon of a nude female riding a phallic space ship, with the text **"THANKS FOR WATCHING!"**

 

43.     Alarmingly, this above content is only from three days on Snapchat Discover and represents only a fraction of the adult content from those days.

44.     While adults should be free to consume any of this material, and may themselves find it to be humorous and witty, the fact that Snapchat does not differentiate content offered to its minor users and adult users is problematic, and ultimately a violation of Federal and State consumer law. Compounding matters is that adult content and images appears to be directly marketed and advertised to minors based on the use of cartoons, childhood relatable images, and very young looking models. Mixed with the content are messages from Snapchat which say: "If They Don't Snap You On A Daily Basis It Isn't Real."



45.     Snapchat controls and curates and in many cases helps create the the content it posts with its media partners shown above.  Across all media partners, whether it is Vice News, Buzzfeed, MTV, or any other media partner, there is a clear pattern and practice of curating the Discover page with articles that emphasize hardcore sex and sexual themes and liberality of drug use.

46.     Snapchat is not an idle or passive observer of content published by third-party publishers on Snapchat Discover.  Rather, it is involved in all aspects and all decisions made regarding content that is ultimately published.

47.     Plaintiff John Doe, and the putative class of minors, are undoubtedly interested in discovering new things on Snapchat.  However, the decision to discover explicit adult material is not one that should be made for minors by Snapchat.

### B.     *SNAPCHAT TERMS OF SERVICE / COMMUNITY GUIDELINES*

48.     Snapchat restricts use to individuals 13 and over.  When an individual signs into Snapchat for the first time they are prompted to input their date of birth.  They are also required to read and approve Snapchat's "Terms of Service."[9]  Snapchat's Terms of Service was last updated on March 29, 2016 to address additional privacy concerns raised by Snapchat Discover.  However, the updated Terms of Service nowhere addresses the adult content on Snapchat Discover. [10]

49.     Snapchat's "Terms of Service," Section 1: "Who Can Use the Service" states:

> **No one under 13 is allowed to create an account or use the Services. We may offer additional Services with additional terms that may require you to be even older to use them. So please read all terms carefully.**

50.     Only one other reference to the "age" of the user appears in Snapchat's Terms of Service on Section 10: "Purchase and Payments," which states:

---

[9] https://www.snapchat.com/terms

[10] http://marketingland.com/snapchat-changed-terms-service-privacy-policy-170899

**It's your sole responsibility to manage your purchases. If you are under 18 (or younger than the age of legal majority in your place of residence), you must obtain your parent's or guardian's consent before making any purchases.**

51.     There are no other references to "parents," or "adult supervision," or "additional terms that require you be even older," or any similar information.

52.     The only information provided by Snapchat about sexually suggestive content is on its "Community Guidelines" section of its support website[11].  There, the Community Guidelines addresses only communications between users and not communications sent by Snapchat to users on Snapchat Discover.  Strangely, the Community Guidelines addresses only sending "explicit content found _outside_ of Snapchat" but remains silent on sending explicit content found _within_ Snapchat. (emphasis supplied)

53.     Snapchat's "Community Guidelines" state:

**What not to Snap:**

**Pornography**

**Snapchat prohibits accounts that use public Stories to distribute sexually explicit content or promote sexually explicit content _found outside_ of Snapchat.**

**Sexually explicit content includes Snaps that depict _real or implied_ sexual acts or nudity in a sexual context.**

**Nudity or sexually suggestive content involving minors (people under the age of 18)**

**Never post or send any nude or sexual content involving people under the age of 18 -- even yourself.**

**This includes _adding drawings or captions to a Snap to make it sexual_ -- even as a joke.**

---

[11] https://support.snapchat.com/en-US/article/guidelines

**If you violate these rules, we may remove the offending content or terminate your account. If your account is terminated, you won't be allowed to use Snapchat again.**

54.     The content on Snapchat's Discover clearly includes both "implied sexual acts" and "sexual content involving people under the age of 18." Snapchat makes this content equally available to minor users as it does to its adult users.   The content Snapchat offers on Snapchat Discover consistently violates Snapchat's own Community Guidelines. If Snapchat were a user, it would be banned from using Snapchat.

## C.     *JOHN DOE AND THE PUTATIVE CLASS*

55.     John Doe is a 14 year old boy who lives in Los Angeles, California.  John gets good grades. His favorite class is history and science.  John looks forward to attending college.

56.     Like most of his friends, John recently joined the "Snapchat craze."  John uses his account on Snapchat as his primary method of communicating with friends.  John has fun posting pictures of himself using features from Snapchat's facial recognition technology.  John also uses the video chat feature on Snapchat to stay connected with friends and relatives.

57.     On July 1, 2016, John was exploring Snapchat Discover when he came to an article posted by Snapchat and its media partner Buzzfeed which had pictures of his favorite Disney characters including those from movies he grew up with. However, something was obviously wrong and different with these images.   The compilation of Disney images John accessed included pornographic text and innuendo next to the photographs.  In fact, the photographic compilation was called:  **"23 Pictures That Are Too Real If You've Ever had Sex With A Penis."**

58.     Innocent pictures from John's favorite Disney movies were perverted into obscene sexual images and text.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

59.    The pictures contained the captions: **"When he pulls down his pants it's more beautiful than you could have imagined," "When he came way harder than you expected," "When he aims for your face but you have to protect your eyes," "When he proceeds to get it all over your face . . . and clothes,"** and **"When he unexpectedly slaps your face with his penis."**  Here is a sampling of the "Disney images" John saw:













60.    When John swiped to content produced by Snapchat and its media partner Vice, he was equally perplexed and disturbed.  The feature article was called:  **"What It Is**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Really Like to Let People Finger You in Public."** The article begins, **"*When they touch my vagina I say 'You have 30 seconds – You have to look into my eyes.'"*** The article includes images of strangers touching and groping a "performance artist" in public. Some of the reflections from the performance artist included, "***So yeah, maybe some men were a bit stronger with the hands, some maybe put more fingers in my vagina. . .***" This was the article that was posted.





61.     John brought what he observed to the attention of his mother. John's mother was shocked and horrified to learn that such explicit content was actually being made available by Snapchat without warning, filters, or parental control.

62.     John Doe, by and through his mother and guardian, Lynette Young, are compelled to bring this class action on behalf of the millions of children and parents who have been deprived of the choice to monitor explicit material being made available by Snapchat to minors.

<u>**CLASS ACTION ALLEGATIONS**</u>

63.     Plaintiff brings this class action on behalf of himself and all others similarly situated as Class Members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64.     Plaintiff seeks to represent a "National Class" defined as follows:

        **All United States residents, including but not limited to a subclass**

**of individuals between the ages of 13-17, who are or were registered users of Snapchat from January 27, 2015 to the present, excluding Defendant, Defendant's officers, directors, and employees, Defendant's subsidiaries, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

65. Plaintiff seeks to represent a "California Subclass" defined as follows:

**All California residents, including but not limited to a separate subclass of individuals between the ages of 13-17, who are or were registered users of Snapchat from January 27, 2015 to the present, excluding Defendant, Defendant's officers, directors, and employees, Defendant's subsidiaries, the Judge to which this case is assigned and the immediate family of the Judge to which this case is assigned.**

66. Plaintiff is a member of the putative class that he seeks to represent. Plaintiff is a United States resident, also residing in California, who is a registered user of Snapchat.

67. The definition of the putative class is narrowly tailored so as to include only identifiable members who can be identified through Defendant's database of registered users for the discreet period of time from when Snapchat Discover launched on January 27, 2015 through the present.

68. The proposed class is so numerous that the individual joinder of all its members, in this or any action, is impracticable. The exact number or identification of the members of the putative class is presently unknown to Plaintiff, but it is believed to comprise millions of California and United States residents, thereby making joinder impractical.

69. Common questions of fact and law exist as to all Class Members and predominate over questions affecting only individual members. These include, but are not

limited to, the following:

(a) Whether Snapchat owed a duty to warn minors of the harmful and offensive content on Snapchat Discover.

(b) Whether Snapchat owed a duty to warn the parents of minors of the offensive content on Snapchat Discover.

(c) Whether Snapchat owed a duty to differentiate and/or filter the content available on Snapchat Discover to 13-17 years old versus content available to adult audiences.

(d) Whether Snapchat knowingly exposed minor children on Snapchat Discover to harmful and offensive images, and encouraged the sharing of such images, to grow its user base and increase profit.

(e) Whether Snapchat violated its own community guidelines by making available images and content involving implied and real sexual conduct including depictions of sexual conduct between minors.

(f) Whether any actual or implied representations made by Snapchat that its use was safe for minors was false or misleading.

(g) Whether Plaintiff and the Class members are entitled to an injunction, damages, restitution, equitable relief and other relief deemed appropriate and the amount and nature of such relief.

70. Plaintiff's claims are typical of the claims of the putative class members. Plaintiff and all putative class members were not warned of the harmful, offensive, and adult content on Snapchat Discover.

71. The factual bases of Defendant's misconduct are common to the putative class members and represent a common scheme and pattern of practice of exposing minors to harmful, offensive, and adult content, resulting in injury to all putative class members alike. Plaintiff is asserting the same rights, making the same claims, and seeking the same

relief for themselves and all other putative class members. The central question of whether Defendant should have warned, filtered, or otherwise restricted access to minors of harmful, offensive, and adult content predominates over all other questions, legal and factual in this litigation.

72.     Plaintiff is an adequate representative of the proposed class because he is a putative class member and does not have interests that conflict with those of the other putative class members he seeks to represent. Plaintiff is represented by experienced and able counsel, who has litigated numerous class-action lawsuits, and Plaintiff's Counsel intends to prosecute this action vigorously for the benefit of the proposed class. Plaintiff and their Counsel will fairly and adequately protect the interests of the class members.

73.     A class action is the superior available method for the efficient adjudication of this litigation because:

    a.  The prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications which would establish incompatible results and standards for Defendant;

    b.  Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their own separate interests;

    c.  Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions, and conserves the resources of the courts; and

d.   The claims of the individual class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Class to individually seek redress for Defendant's wrongful conduct. Even if the members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

74.   A class action for injunctive and equitable relief pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate. Defendant acted or refused to act on grounds generally applicable to the Class thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Defendant's actions are generally applicable to the Class as a whole, and Plaintiff, on behalf of the Class, seeks damages and injunctive relief described herein. Moreover, Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

**FIRST CAUSE OF ACTION**

**For Violations of Unfair Business Practice Act**

**California Business and Professions Code §17200 *et seq.***

**(On Behalf of the Putative California Subclass)**

75.      Plaintiff restates each and every paragraph of this Complaint as if fully rewritten herein.

76.      For the reasons discussed below, Defendants have engaged in unfair competition and prohibited activities.

77.      Unfair competition includes any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by California Bus. & Prof. Code §17200.

78.      Plaintiff and the putative class seek equitable relief and to enjoin Defendants from engaging in its current practice and scheme of exposing minor children to harmful and offensive images without warning and/or reasonable parental filtering to differentiate between content consumed by minors ages 13-17 and adult users.

79.      Pursuant to Cal. Bus. & Prof. Code §17200 *et seq.*, Plaintiff and the putative class seek an order enjoining the above-described wrongful acts and practices of the Defendants and for restitution and disgorgement.

**SECOND CAUSE OF ACTION**

**NEGLIGENCE *PER SE***

**(On Behalf of the National Class or, alternatively,**

**the Putative California Subclass)**

80.      Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

81.     Plaintiff John Doe, and the putative national class and California subclass were injured by the failure of Snapchat, Inc. to comply with the Federal Communications Decency Act, 47 U.S.C. §230 and 47 U.S.C. §231.

82.     47 U.S.C. §230(b) states that it is the policy of the United States . . . (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services; (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material. . ."

83.     47 U.S.C. §230(d) "Obligations of interactive computer service" states:  A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.

84.     47 U.S.C. §230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. §230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."

85.     Snapchat Inc. meets both the definitions of an interactive computer service and an information content provider as it is "an information service . . . that provides or

enables access to the internet . . ." and it is "an entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet."

86.    47 U.S.C. §231(a) Requirement to restrict access provides:

(1) Prohibited conduct

Whoever knowingly and with knowledge of the character of the material, in interstate or foreign commerce by means of the World Wide Web, makes any communication for commercial purposes that is available to any minor and that includes any material that is harmful to minors shall be fined not more than $50,000, imprisoned not more than 6 months, or both.

(2) Intentional violations

In addition to the penalties under paragraph (1), whoever intentionally violates such paragraph shall be subject to a fine of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(3) Civil penalty

In addition to the penalties under paragraphs (1) and (2), whoever violates paragraph (1) shall be subject to a civil penalty of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

87.    47 U.S.C. §231(e)(6) defines "material that is harmful to minors" as "material that is harmful to minors" means any communication, picture, image, graphic image file, article, recording, writing, or other matter of any kind that is obscene or that—

(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest;

(B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an

actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and

(C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

88.     Defendant Snapchat Inc., through its curating, direct editorial oversight, control, and profiteering off of Snapchat Discover is liable for knowingly promoting and publishing material that is harmful to minors. A fractional sample of harmful and offensive images and content published from July 1, 2016 through July 3, 2016, demonstrates substantial content intentionally targeted at minors.

89.     Additionally, Defendant Snapchat Inc., is liable under 47 U.S.C. §230(d) for failing to warn minors or parents in its Terms of Service or User Agreement about the harmful and offensive content Snapchat, Inc., knowingly makes available to minors on Snapchat Discover.

90.     As a direct and proximate result of Snapchat, Inc.'s violation of law, Plaintiff and the putative class are entitled to consequential damages based on the statutory scheme provided by 47 U.S.C. §230, *et seq.*

### THIRD CAUSE OF ACTION:

### Violations of 47 U.S.C. §230, *et seq.*

### (On Behalf of the National Class or, alternatively,

### the Putative California Subclass)

91.     Plaintiff incorporates by reference all other paragraphs of this complaint as if fully set forth herein, and further alleges as follows:

92.     Plaintiff John Doe, and the putative National class and California subclass were injured by the failure of Snapchat, Inc. to comply with the Federal Communications Decency Act, 47 U.S.C. §230 and 47 U.S.C. §231.

93.     47 U.S.C. §230(b) states that it is the policy of the United States . . . (3) to encourage the development of technologies which maximize user control over what

- 25 -

information is received by individuals, families, and schools who use the Internet and other interactive computer services; (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material. . .

94.    47 U.S.C. §230(d) "Obligations of interactive computer service" states:  A provider of interactive computer service shall, at the time of entering an agreement with a customer for the provision of interactive computer service and in a manner deemed appropriate by the provider, notify such customer that parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist the customer in limiting access to material that is harmful to minors. Such notice shall identify, or provide the customer with access to information identifying, current providers of such protections.

95.    47 U.S.C. §230(f)(2) defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. §230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."

96.    Snapchat Inc. meets both the definition of an interactive computer service and an information content provider as it is "an information service . . . that provides or enables access to the internet . . ." and it is "an entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet."

97.    47 U.S.C. §231(a) Requirement to restrict access provides:

(1) Prohibited conduct

Whoever knowingly and with knowledge of the character of the material, in

interstate or foreign commerce by means of the World Wide Web, makes any communication for commercial purposes that is available to any minor and that includes any material that is harmful to minors shall be fined not more than $50,000, imprisoned not more than 6 months, or both.

(2) Intentional violations

In addition to the penalties under paragraph (1), whoever intentionally violates such paragraph shall be subject to a fine of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

(3) Civil penalty

In addition to the penalties under paragraphs (1) and (2), whoever violates paragraph (1) shall be subject to a civil penalty of not more than $50,000 for each violation. For purposes of this paragraph, each day of violation shall constitute a separate violation.

98.    47 U.S.C. §231(e)(6) defines "material that is harmful to minors" as "material that is harmful to minors" means any communication, picture, image, graphic image file, article, recording, writing, or other matter of any kind that is obscene or that—

(A) the average person, applying contemporary community standards, would find, taking the material as a whole and with respect to minors, is designed to appeal to, or is designed to pander to, the prurient interest;

(B) depicts, describes, or represents, in a manner patently offensive with respect to minors, an actual or simulated sexual act or sexual contact, an actual or simulated normal or perverted sexual act, or a lewd exhibition of the genitals or post-pubescent female breast; and

(C) taken as a whole, lacks serious literary, artistic, political, or scientific value for minors.

99.    Defendant Snapchat Inc., through its curating, direct editorial oversight,

control, and profiteering off of Snapchat Discover is liable for knowingly promoting and publishing material that is harmful to minors. A fractional sample of images and content published from July 1, 2016 through July 3, 2016, demonstrates substantial content intentionally targeted at minors which is harmful to minors.

100.    Additionally, Defendant Snapchat Inc., is liable under 47 U.S.C. §230(d) for failing to warn minors or parents in their Terms of Service or User Agreement about the content Snapchat, Inc. knowingly makes available to minors on Snapchat Discover.

101.    As a direct and proximate result of Snapchat, Inc.'s violation of law, Plaintiff and the putative class are entitled to consequential damages based on the statutory scheme provided by 47 U.S.C. §230, *et seq.*

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

**(On Behalf of the National Putative Class or, alternatively,**

**the California Subclass)**

102.    Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

103.    Plaintiff, and the putative class, conferred a tangible economic benefit upon Defendants by signing up as a user to Snapchat, sacrificing privacy rights and privileges, and consuming advertisements on the Discover page.

104.    As a result of Defendant Snapchat, Inc. providing offensive materials to minors on Snapchat Discover, Snapchat Inc. has earned hundreds of millions of dollars in advertising revenue.   Defendant was enriched, at the expense of the Plaintiff and each member of the putative class.

105.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and members of the putative class.

106.   It would thus be unjust and inequitable for Defendant to retain the benefit without restitution or disgorgement of monies paid to Defendant, or such other appropriate equitable remedy as appropriate, to the Plaintiff and other members of the putative class.

### FIFTH CAUSE OF ACTION

### INJUNCTIVE RELIEF

**(On Behalf of the National Class or, alternatively,**

**the California Putative Subclass)**

107.   Plaintiff, individually, and on behalf of all others similarly situated, adopts and incorporates by reference all allegations contained in the foregoing paragraphs as though fully set forth herein.

108.   Defendant has refused to act on grounds generally applicable to the injunctive relief sought by Plaintiffs and other members of the putative class and subclass, thereby making final injunctive relief appropriate.

109.   Defendant's conduct, as more fully set forth herein, both in the past and through the present, has demonstrated a willful disregard for the health and safety of minors and their parents.

110.   If Defendant is allowed to continue with these practices, consumers, including the Plaintiff and the putative class and subclass will be irreparably harmed in that they do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint, unless injunctive relief is granted to stop Defendant's improper conduct.

111.   Plaintiff and the putative class and subclass are therefore, entitled to an injunction requiring Defendant to warn users of Snapchat about the offensive and adult content on Snapchat Discover, to empower parents and/or guardians with decisions regarding the access their children have to Snapchat Discover, and/or to provide parental filters and blocking which differentiates access that Snapchat users have as opposed to adult users of Snapchat.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **PRAYER FOR RELIEF**

WHEREFORE, the putative representative Plaintiff, on behalf of himself and the putative members of the class defined herein prays for judgment against the Defendants as follows:

A.  For an order certifying this action and/or common issues raised herein as a "Class Action under the appropriate provision of Federal Rule of Civil Procedure 23(a), 23(b) and 23(c); designating Class Representatives; and appointing the undersigned to serve as class counsel.

B.  For notice of class certification and of any relief to be disseminated to all Class Members and for such other further notices as this Court deems appropriated under Fed. R. Civ. P. 23(d)(2);

C.  For an order requiring complete and immediate disclosure of all studies, reports, analyses, data, compilations, and other similar information within the possession, custody, or control of Defendant concerning, relating to, or involving the marketing, advertising, development, implementation, creation, and partnership  between Snapchat and its media partners relating to Snapchat Discover.

D.  For an order barring Defendants from destroying or removing any computer or similar records which record evidence related to Snapchat Discover.

E.  For an order barring Defendants from attempting, on its own or through its agents, to induce any putative Class Members to sign any documents which in any way releases any of the claims of any Putative Class Members;

F.  For an award of compensatory damages in the amount to be determined for all injuries and damages described herein;

G.   For an award of punitive damages to the extent allowable by law, in an amount to be proven at trial;

H.   Awarding restitution and disgorgement of Defendants' revenues to the Plaintiff and the proposed Class Members;

I.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them, restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by the Court to be wrongful;

J.   Ordering Defendants to engage in a corrective advertising campaign;

K.   Awarding attorney fees and costs; and

L.   Providing such other relief as may be just and proper.


Dated:  July 7, 2016                    GERAGOS & GERAGOS, APC


                                         /s/ Mark J. Geragos
                                        MARK J. GERAGOS
                                        BEN J. MEISELAS
                                        Attorneys for Plaintiff John Doe,
                                        by and through his Guardian *Ad Litem* Lynette Young,
                                        on behalf of himself and all others similarly situated

1
2

## **DEMAND FOR JURY TRIAL**

3
4

    Plaintiff hereby demands a trial by jury.

5
6

Dated:  July 7, 2016                         GERAGOS & GERAGOS, APC

7
8
9
10
11
12

                                         _/s/ Mark J. Geragos_____
                                         MARK J. GERAGOS
                                         BEN J. MEISELAS
                                         Attorneys for Plaintiff John Doe,
                                         by and through his Guardian *Ad Litem* Lynette Young,
                                         on behalf of himself and all others similarly situated

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28